## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **LEILA K. POWERS,** | ] |
| | ] |
| **Plaintiff,** | ] |
| | ] |
| **v.** | ]       **CV-07-BE-587-S** |
| | ] |
| **MICHAEL J. ASTRUE, Commissioner** | ] |
| **of Social Security,** | ] |
| | ] |
| **Defendant.** | ] |

## MEMORANDUM OPINION

This case comes before the court on "Defendant's Motion for Summary Judgment" (doc. 38). The parties have fully briefed the motion. Plaintiff Powers asserts that the Social Security Administration failed to promote her on the basis of her race and in retaliation for her prior EEO activity, in violation of her rights under Title VII and 42 U.S.C. § 1981. For the reasons stated below, the Defendant's motion for summary judgment (doc. 38) will be GRANTED as to both Powers' race discrimination and retaliation claims. A separate order to that effect will be entered simultaneously.

## FACTS

The Social Security Administration (SSA) issued a vacancy announcement on January 14, 2004, for one position of Social Insurance Administrator District Manager in the Birmingham East Office. The announcement specifically provided that the position was temporary, not to exceed six months, but that it could be extended. Plaintiff Leila Powers, an African American, applied for the position on January 29, 2004.

The District Manager position was to be filled under the provisions of the Management Officials Promoting Plan (MOPP). The MOPP requires that the candidates' applications be reviewed to determine if applicants meet the basic qualifications and eligibility requirements described in the vacancy announcement. The MOPP further requires that applicants be rated on the basis of the information provided in their applications, which may be supplemented with information from the automated personnel information system.

The MOPP explains the procedures for rating and ranking candidates on the basis of their experience, training, self-development, awards, and outside activities. (See Def.'s Ex. 1). Under the MOPP, only applicants who earned at least 50% of the total maximum score possible under the rating schedule could be included on a Best Qualified List (BQL).

The SSA reviewed and rated Powers and placed her on the BQL for the District Manager position. Human Resources Specialist Donna Voss approved the BQL for the District Manager position. The BQL listed the candidates' names alphabetically and made no reference to the candidates' rating scores.

Under the MOPP, the BQL and applications were then submitted to the selecting officer for the announced position. Under the MOPP, selection decisions should be based on the selecting official's personal judgment as to which candidate has the greatest potential for successful performance of the duties and responsibilities of the position. Selecting officials should consider the applicants' overall qualifications, including work histories, work experiences, accomplishments, training, education, awards relating to knowledge or skills, and other characteristics required to successfully perform the duties of the position. Selecting

2

officials may also consider supervisory recommendations and selection interviews, but these are not required.

The Alabama Area Director Charles Wofford, a Caucasian, was the selecting official for the District Manager position at issue in this case. Wofford selected the Assistant District Manager Jean Nix, a Caucasian, for the District Manager position.

Nix had worked for the SSA since 1980 in various positions including Claims Representative, Claims Technician, and Claims Clerk. In April 1997, the SSA promoted Nix to the position of Operations Supervisor at the Birmingham East office. She worked as Management Support Specialist from November 1998 until March 2001. Her duties as Management Support Specialist were the same as her duties as an Operations Supervisor, except that she did not approve advance leave requests or conduct performance appraisals of other employees. She did continue to make recommendations related to performance appraisals and advanced leave to the District Manager. In March 2001, Nix returned to the position of Operations Supervisor.

Nix was also the Manager of the Alabama Special Workloads Office, which was also located at the Birmingham East office and which was established to assist any office in the area with any workload. She was also involved in two state-wide programs, including serving as the Alabama coordinator for the Special Title II Disability Workload and the Disability Claims Manager pilot. She also served as the "alter ego" of the District Manager, who was routinely away conducting Regional Labor Relations activities.

Nix was promoted on November 17, 2002, to the position of Assistant District Manager. In that position, Nix had the opportunity to engage in every facet of managing a field office,

3

because the District Manager was often away working on national projects and other responsibilities of a District Manager. As the Assistant District Manager, Nix supervised the other employees in the Birmingham East office, including Operations Supervisors and Management Support Specialists. She also dealt with local union representatives regarding workflow problems and changes in conditions of employment.

Nix received several awards since her promotion to Operations Supervisor in 1997. She received a Regional Commissioner's Citation recognizing her outstanding service and leadership in the Birmingham East office. She also received a Quality Step Increase. She holds a certificate for completing business classes at Shelton State Community College. Wofford did not seek recommendations regarding Nix's candidacy for the position, because he had personal knowledge that Nix had been running the Birmingham East office and because he had spoken frequently with Nix's first line supervisor, who spoke highly of Nix.

Powers has worked for the SSA since 1974 in various positions. In 1992, the SSA promoted Powers to the position of Operations Supervisor at the Decatur, Georgia, District Office. She subsequently received a pay scale upgrade in 1993, though she remained an Operations Supervisor. Plaintiff requested and received a hardship transfer to Gadsden, Alabama, in 1995 to fill a vacant position. After that, she requested a hardship transfer to the metropolitan Birmingham area.

In October 1995, Powers was transferred to the Decision Writing Unit of the Office of Hearings and Appeals, despite her appointment by the Regional Commissioner to an Operational Supervisor position in Bessemer. Powers alleges that Wofford reassigned her to the Decision Writing Unit, because he did not want her in the Bessemer office, which reported to him.

Wofford asserts that he assigned Powers to the Decision Writing Unit, because no Operational Supervisor positions were vacant in the Bessemer office at that time. Powers transferred to a Management Support Specialist in the Birmingham Teleservice Center in August 1998.

Powers acted as the Assistant District Manager in the Gadsden Field Office from September 2000 to March 2001. In the position of Assistant District Manager, she served as the deputy and "alter ego" to the District Manager and shared administrative and operational functions with the District Manager. From March 2001 to September 2001, Powers served as a program and technical expert for field offices in Alabama at the Center for Disability Operations in Atlanta, Georgia. Her positions as Assistant District Manager in Gadsden and program and technical expert in Atlanta were both part of a Leadership Development Program.

Powers returned to the Southeastern Program Service Center in Birmingham in September 2001 and served as a Module Manager. Powers has received several awards, including an Associate Commissioner's Citation, for producing interactive video training sessions; a Regional Commissioner's Citation; and a Quality Step Increase. Powers holds a Bachelor's Degree in Business Administration from the University of Montevallo. Powers has also served as the President of the Federal Management Association since January 14, 2004.

Wofford contacted Quittie Wilson, Powers' second line supervisor, for a recommendation during the selection process. Wofford asserts that Wilson told him Powers had been confrontational in the past, but that she had mellowed and improved. Wofford also asserts that Wilson told him Powers did a good job and worked well with labor relations. Powers asserts that Wilson told her he gave an excellent recommendation of her to Wofford. Powers points to Wilson's recent selection of her as Branch Chief as evidence of Wilson's favorable impressions

of her.

Powers has prior Equal Employment Opportunity activity. Her prior EEO activity occurred in 1998 and involved her request to be transferred from the Decision Writing Unit to a field office in the metropolitan Birmingham area. Powers asserts that a vacancy in the Bessemer field office was open at the time. Wofford asserts that no positions were available in the Birmingham metropolitan area. Powers ultimately accepted a transfer to an opening in Gadsden, but she requested EEO counseling in July 1998, because she was unhappy with the options provided to her by Wofford. When Wofford offered her a position as a Management Support Specialist in the Southeastern Service Program Center, Powers accepted the position and withdrew her request for EEO counseling.

Powers also engaged in EEO activities in 2003. In December 2003, Powers was named as a plaintiff's witness in Larry Moore's EEO case against the SSA for conduct by Wofford. The hearing for Moore's case was due to take place in March 2004.

Wofford selected Nix over Powers in the hiring decision at issue in this case in February 2004. Defendant asserts that Powers' race and EEO activity had no bearing on Wofford's decision in the selection at issue in this case.

Powers filed this case, alleging that Defendant failed to offer her a position, despite her superior qualifications, because of her race, and that Defendant failed to offer her a position in retaliation for her EEO activities in violation of her rights under Title VII and 42 U.S.C. § 1981. Defendant moved for summary judgment, and the parties have fully briefed the motion.

## STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure. Summary

6

judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56. When a district court reviews a motion for summary judgment must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The moving party can meet this burden by offering evidence showing no dispute of material fact or by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." *Id.*

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec.*

7

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added); *see also* Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e), 28 U.S.C. app. ("The very mission of summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."). The moving party need not present evidence in a form admissible at trial; "however, he may not merely rest on [the] pleadings." *Celotex*, 477 U.S. at 324. If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury. *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Graham*, 193 F.3d at 1282. The non-moving party "need not be given the benefit of every inference but only of every reasonable inference." *Id.* The evidence of the non-moving party "is

8

to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. After both parties have addressed the motion for summary judgment, the court must grant the motion if no genuine issues of material fact exist and if the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

## ANALYSIS

Plaintiff Powers asserts that Defendant discriminated against her on the basis of race and retaliated against her for EEO activity in violation of her rights under Title VII and 42 U.S.C. § 1981. Specifically, she asserts that Defendant failed to promote her to District Manager because of her race, and instead promoted a less qualified Caucasian employee. She also asserts that Defendant failed to promote her in retaliation for her prior EEO activity.

## I.    Racial Discrimination

The court analyzes claims of race discrimination under § 1981 in the same manner as claims brought under Title VII. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). One way to establish a claim of racial discrimination is through direct evidence. *Burrell v. Bd. of Trs. of Ga. Military Coll.*, 125 F.3d 1390, 1393 (11th Cir. 1997). If the plaintiff cannot prove discrimination by direct evidence, as in this case, the plaintiff must establish her prima facie case through the burden shifting analysis articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Nevertheless, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated . . . remains with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 251-52 (1981).

Under the *McDonnell Douglas* framework, the plaintiff "must carry the initial burden under the statute of establishing a prima facie case of racial discrimination." 411 U.S. at 802. A

plaintiff can establish a prima facie case of racial discrimination based on disparate treatment by showing that she belongs to a racial minority, she experienced an adverse job action, her employer treated similarly situated employees outside her protected classification more favorably, and she was qualified to do the job. *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003). Defendant does not dispute that Powers has established a prima facie case of racial discrimination.

Once the plaintiff establishes her prima facie case, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. The SSA has proffered several reasons for its decision to select Nix instead of Powers for the position of District Manager. The SSA asserts that Nix displayed the ability to handle the obligations and responsibilities of the District Manager position while serving as the Assistant District Manager, who is responsible for acting as the District Manager's "alter ego" in his absence, for nearly two years. The SSA also asserts that Nix, over the course of filling in for the Birmingham East District Manager while he was away, demonstrated the ability to lead a productive office. The SSA also cites Nix's area-wide leadership roles, her experience in field office operations, her technical abilities, and her established working relationship with the employees in the Birmingham East office as evidence supporting its decision. Though Powers had also worked as an Assistant District Manager and had many awards and leadership experiences, the SSA asserts that Nix, who had served as the Assistant District Manager in the office where the District Manager position at issue would be stationed, was the better choice. Furthermore, Powers had served only a six month rotation as an Assistant District Manager in the Gadsden office, whereas Nix had been Assistant District

10

Manager of the Birmingham East office for over a year when she applied for the District

Manager position. The court finds that Defendant has met its burden of showing legitimate,

nondiscriminatory reasons for its decision to promote Nix instead of Powers.

Once the employer shows a legitimate, nondiscriminatory reason for its decision, the

employee must "be afforded a fair opportunity to show that [the employer's] stated reason . . .

was in fact pretext." *McDonnell Douglas*, 411 U.S. at 804.  To survive summary judgment, the

employee must show "such weaknesses, implausibilities, inconsistencies, incoherencies or

contradictions in the employer's proffered legitimate reasons for its actions that a reasonable

factfinder could find them unworthy of credence." *Cooper*, 390 F.3d at 725.

The SSA asserts that Wofford chose Nix because of her established working relationship

with the employees in the Birmingham East office, her demonstrated ability to perform the duties

of the District Manager position, and her knowledge of the operation procedures of the

Birmingham East office. Powers asserts that the SSA's reasons for hiring Nix are pretextual,

because Powers is more qualified.

"In the context of a promotion '[a] plaintiff cannot prove pretext by simply arguing or

even by showing that he was better qualified than the [person] who received the position he

coveted.'" *Springer v. Convergys Customer Mgmt. Group Inc.*, 509 F.3d 1344, 1349 (11th Cir.

2007) (quoting *Brooks v. County Com'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th

Cir. 2006)). "[A] plaintiff must show that the disparities between the successful applicant's and

his own qualifications were 'of such weight and significance that no reasonable person, in the

exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'"

*Springer*, 509 F.3d at 1349 (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir.

2004)). "[W]here the qualifications disparity is not the *sole* basis for arguing pretext, the disparity need not be so dramatic to support an inference of pretext." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 772 (11th Cir. 2005) (emphasis in original) (citing *Bass*, 256 F.3d at 1107 ("Hiring a less qualified person can support an inference of discriminatory motivation.")).

Powers asserts that she was more qualified because she had eleven years of managerial experience, compared to Nix's five years of managerial experience. Powers asserts that Nix had only been a GS-13 level manager for ten weeks more than the minimum required to qualify for the District Manager position. Nevertheless, Nix did have the requisite minimum years of managerial experience. Powers also asserts that she has had broader managerial experience at the GS-13 level, serving as a Module Manager, a Disability Specialist, and an Assistant District Manager. Nix, on the other hand, had served as the Assistant District Manager, the "alter ego" of the District Manager, in the Birmingham East office. Nix, therefore, was familiar with the employees in that particular office and local union representatives.

Powers asserts that her experience with the SSA in general is also broader, including positions in the Program Service Center, Teleservice Center, Office of Hearings and Appeals, and field offices. In comparison, Powers asserts that Nix spent her entire career at SSA working in district field offices. Powers also asserts that she has worked with the SSA longer than Nix. Powers began working with the SSA in 1974, and Nix began working with the SSA in 1980.

Powers asserts that as a Module Manager, she managed a much larger group of employees and a wider range of employee disciplines than Nix has managed. Powers also asserts that she has received higher level awards than Nix; for example, Powers notes that she was selected to participate in a two-year national leadership development program designed to

12

prepare her for higher level leadership positions. Nevertheless, Nix's allegedly narrower managerial experience had been in the Birmingham East office, where the position at issue was located. Furthermore, Nix had also received several awards in recognition of her outstanding service and leadership specifically in the Birmingham East office.

The court finds no qualification disparity "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004). As the Eleventh Circuit has noted, "[f]ederal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions.'" *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (quoting *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir. 1988) (citations omitted)). The court finds that any disparity in qualifications that may exist here is so slight that it fails to establish that the SSA's reasons for not promoting Powers were pretextual. Supervisory experience in the same office as the position as issue plays a valid role in the selection process for a managerial position.

Powers also asserts that she was discriminated against because Wofford never truly considered her for the District Manager position. In support of this assertion, Powers identifies parts of Wofford's testimony in an EEO hearing for a case unrelated to the case at bar – Larry Moore's case against Wofford for the hiring of the Gadsden District Manager position in April 2004. Wofford testified in that case that he did not seek any recommendations for Powers for the Gadsden District Manager position because he knew her.

In this case, however, Wofford testified that he <u>did</u> seek a recommendation of Powers from her supervisor Quittie Wilson in making his decision about the Birmingham East District

13

Manager position. Powers offered no evidence to contradict Wofford's testimony concerning recommendations for the position at issue; Wofford's testimony concerning an unrelated case plays no relevance in this case. The court finds that Wofford did seek a recommendation of Powers for the promotion decision at issue in this case. Nothing in the record indicates that Wofford did not truly consider Powers for the Birmingham East District Manager position.

Powers also asserts that Wofford made false statements about his selection decision, which allegedly raises doubts about his proffered reasons for not selecting Powers. Powers is correct that "a plaintiff is entitled to survive summary judgment . . . if there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997). Powers asserts that Wofford made false statements about the content of Quittie Wilson's recommendation of Powers for the Birmingham East District Manager position.

Wofford stated that Quittie Wilson told him in her recommendation that Powers was the President of the Management Association; that Powers had been confrontational when she first came to the Program Service Center in 2001, but she had mellowed and made improvements; and that Powers does a good job with her module and works well with labor relations. In comparison, Quittie Wilson stated that she told Wofford in her recommendation that Powers was a no-nonsense manager; that Powers was results-oriented and had managed her module well; and that Wilson would give Powers serious consideration if Wilson were the decision maker. Wofford himself admits that Powers was qualified and that his decision regarding the Birmingham East District Manager position was a difficult one.

The court notes some differences between Wilson's and Wofford's recollection of their

14

conversation regarding Powers' application for the Birmingham East District Manager position. Their recollections contain different words articulating generally similar statements and sentiments. The court finds no dramatic difference between their recollections; that they remember things somewhat differently does not necessarily mean that one of them is lying. The court finds that Powers has not established that Wofford did not truthfully state the reasons for his decision.

Powers also asserts that the record indicates that Wofford did not objectively believe that Nix was the best candidate for the position. As evidence for this assertion, Powers points to the SSA's settlement of a complaint filed by Bonita Chaney regarding Wofford's Birmingham East District Manager selection decision. Powers asserts that the SSA's settlement of the Chaney complaint somehow establishes that the SSA did not objectively believe that Nix was the most qualified candidate. The settlement of a claim is a compromise, not an admission of guilt. The SSA's settlement of Chaney's discrimination claim does not mean the SSA discriminated against Chaney, much less that the SSA discriminated against Powers in this case. The court finds that the SSA's settlement with Chaney is irrelevant and does not establish discriminatory intent in this case.

Powers also seeks to establish a pattern and practice of discrimination by providing sufficient evidence "that discrimination is the [SSA's] 'standard operating procedure.'" *Morgan v. Georgia Power Co.*, No. 7:06-CV-50 (HL), 2008 WL 372465, at *6 (M.D. Ga. Feb. 11, 2008). Powers points to the many EEO complaints brought against the SSA for decisions by Wofford as evidence of the SSA's "standard operating procedure." The court notes, however, that all of the

other EEO complaints cited by the Plaintiff have failed.[1]  Powers also presents evidence of other employees who felt Wofford did not relate well with minorities and evidence that Wofford selected two African Americans for management positions out of the twenty opportunities he had to select managers. The court finds that Powers has not established that discrimination is the SSA's "standard operating procedure."

Powers also seeks to establish Wofford's alleged racial animosity as evidence of discrimination. Wofford made notes about the race of each candidate for the Gadsden District Manager position, but made no note of the race of the candidates for the Birmingham East District Manager position at issue in this case. Powers asserts that Wofford's notes in the Gadsden District Manager decision process are somehow relevant, and that Wofford's failure to note the race of the candidates for the Birmingham East position somehow indicates racial animosity. The court fails to see how the absence of a notation of the applicant's race can indicate racial prejudice. The court, therefore, finds that Powers has not presented sufficient evidence to establish Wofford's alleged racial animus.

Powers also asserts that the court should infer discrimination because Wofford, as the decision maker, had the ability to manipulate his evaluation of the subjective factors in a discriminatory fashion. Powers' argument in this regard is conclusory. Wofford has proffered legitimate, nondiscriminatory reasons for his decision. Powers now carries the burden of showing

---

[1] John Barnes filed an EEO charge against the SSA for actions by Wofford, and this court found that the plaintiff presented no evidence of discrimination in May 2007. *Barnes v. SSA*, No. 2:05-CV-2379-KOB (N.D. Ala. May 2, 2007).  Reginald McDaniel also filed a charge against Wofford, and another judge in this district found no evidence of discrimination in June 2006. *McDaniel v. SSA*, No. CV-04-HS-3307-NE (N.D. Ala. June 13, 2006) (Hopkins, J.). Lawrence Moore filed a charge and received a hearing before Administrative Law Judge Frank Bell, who found no evidence of discrimination in May 2004. (Pl.'s Ex. VV at 6).

16

that those proffered reasons are pretextual. The simple reality that a decision maker has the ability to weigh subjective factors in a potentially discriminatory fashion does not establish that the decision maker did in fact act with discriminatory animus.

Powers also asserts that the Eleventh Circuit's rule in *Cooper* is not an appropriate standard, because it sets the bar too high for plaintiffs. In *Cooper*, the Eleventh Circuit determined that a plaintiff can establish pretext by showing that the disparity between her qualifications and those of the selected candidate were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004). Powers argues for a less strenuous "clearly superior" or "significantly better qualified" standard. *See Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1492 (9th Cir. 1995) (following the standard that a Title VII plaintiff must show that her "qualifications were clearly superior to the qualifications of the applicant selected"); *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998) (en banc) (finding that pretext may be inferred if "a reasonable employer would have found the plaintiff significantly better qualified for the job"). The court is bound by Eleventh Circuit precedent.[2] The court finds that the disparities between Powers' qualifications and Nix's qualifications were not "of such weight and significance that no reasonable person . . . could have chosen [Nix] over [Powers]." *Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004).

The court finds an absence of "sufficient evidence to demonstrate the existence of a

---

[2] Nevertheless, the court finds that even under a "clearly superior" or "significantly better qualified" standard, Powers still could not establish pretext on the basis of qualification disparities. Although qualified for the position, the court cannot determine that Powers was "clearly superior" or "significantly better qualified" than Nix.

genuine issue of fact as to the truth of each of the employer's proffered reasons." *Combs*, 106

F.3d at 1529. Accordingly, the court determines that Powers has failed to establish that the SSA's

proffered legitimate, nondiscriminatory reasons for promoting Nix were pretextual. The court,

therefore, grants Defendant's motion for summary judgment as to Powers' racial discrimination

claim, because Powers has not established pretext.

## II.     Retaliation

Powers also asserts that Defendant failed to promote her in retaliation for her prior EEO

activity. The court analyzes claims of retaliation for engaging in a protected activity under the

*McDonnell Douglas* burden-shifting framework. *Bernard v. SSA Security, Inc.*, 2008 WL

4823987, at *2 (11th Cir. 2008). Under the *McDonnell Douglas* framework, the plaintiff "must

carry the initial burden under the statute of establishing a prima facie case" of retaliation. 411

U.S. at 802.

To establish a prima face case of retaliation under Title VII, "a plaintiff must show that

(1) she engaged in statutorily protected expression; (2) she suffered an adverse employment

action; and (3) there is a causal connection between the two events." *Johnson v. Booker T.*

*Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 (11th Cir. 2000) (internal quotation marks

omitted).

To constitute "statutorily protected expression," a plaintiff need not establish an

underlying discrimination claim; instead, the plaintiff must show that she had a "good faith,

reasonable belief" that she was the victim of an unlawful employment practice. *Lipphardt v.*

*Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1187 (11th Cir. 2001). Defendant

concedes that Powers' prior EEO counseling request constitutes "statutorily protected

expression." Defendant, however, does not concede that Powers' other activities constitute statutorily protected expression.

Powers asserts that by being named as a witness in December 2003 for another EEO case brought by Larry Moore against the SSA for decisions made by Wofford, she engaged in "statutorily protected speech." The anti-retaliation clause protects an individual who has "opposed any . . . unlawful employment practice . . . , or because [she] has made a charge, *testified*, assisted, or *participated in any manner* in an investigation, proceeding, or hearing" in a Title VII related proceeding. 42 U.S.C. § 2000e-3(a) (emphasis added). Testimony at an EEO hearing is statutorily protected expression. *See, e.g., EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000) (recognizing participation in an EEO case as "statutorily protected expression"); *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1576-77 (5th Cir. 1989) (finding that testimony in another EEO case constitutes "statutorily protected expression").

Furthermore, being named a favorable witness against the employer in another EEO case can be considered "statutorily protected expression," especially where, as here, the employer is informed of the intent to call the witness in the other EEO case. *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 174-75 (2d Cir. 2005) ("Most convincing, [the employee] was removed . . . just one day after being named as a favorable plaintiff's witness [in another EEO proceeding.") (emphasis in original). The court finds that Powers can establish that she engaged in "statutorily protected expression" both when she requested EEO counseling for her own claim in 1998 and when she was named as a witness in Larry Moore's EEO case in 2003.

Having shown that she engaged in statutorily protected expression, Powers must also establish a causal link between that expression and the adverse employment action of her

19

termination. "The causal link element is construed broadly so that a plaintiff merely has to prove the protected activity and the negative employment action are not completely unrelated." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (internal quotation marks omitted). Generally, "close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact about a causal connection," but to satisfy this showing, a plaintiff must establish "that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). Causation, however, may be established in discrimination cases where the decision maker followed a biased recommendation without independent investigation, such that the decision maker was "a mere conduit . . . to give effect to the recommender's discriminatory animus." *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir.1999).

Defendant argues that because Powers' request for EEO counseling occurred more than five years before the promotion decision at issue in this case, Powers cannot state a prima facie case of retaliation. The Eleventh Circuit has found that the "15-month period that elapsed between [the employee's] grievance and the alleged adverse employment actions belies her assertion that the former caused the latter." *Maniccia v. Brown*, 171 F.3d 1364, 1370 (11th Cir. 1999); *see also Donnellon v. Frueharf*, 794 F.2d 598, 600 (11th Cir. 1986) (finding that the greater the lapse in time between the protected activity and the adverse action, the less likely that the causal link can be drawn). However, Powers was named as a witness in Larry Moore's EEO proceeding and Defendant was made aware of her witness status in December 2003. Powers participation in Larry Moore's case against the SSA for actions taken by Wofford falls well

20

within the temporal proximity of her February 2004 adverse employment action. Accordingly, the court determines that Powers can establish her prima facie case of retaliation based on the temporal connection.

Once the plaintiff establishes her prima facie case, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802.  As this court already noted, Defendant has met its burden of showing legitimate, nondiscriminatory reasons for its decision to promote Nix instead of Powers.

Once the employer shows a legitimate, nondiscriminatory reason for its decision, the employee must "be afforded a fair opportunity to show that [the employer's] stated reason . . . was in fact pretext." *McDonnell Douglas*, 411 U.S. at 804.  To survive summary judgment, the employee must show "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Cooper*, 390 F.3d at 725. As this court has articulated, Powers has not established that Defendant's proffered legitimate, nondiscriminatory reasons for promoting Nix were pretextual. Accordingly, the court grants Defendant's motion for summary judgment as to Powers' retaliation claim, because Powers has not established pretext.

## CONCLUSION

For the reasons stated above, the court GRANTS the Defendant's motion for summary judgment. A separate order to that effect will be entered simultaneously.

Specifically, the court GRANTS the Defendant's motion for summary judgment as to Powers' racial discrimination and retaliation claims, because Powers has not carried her burden

under *McDonnell Douglas*.

Accordingly, the court DISMISSES WITH PREJUDICE Powers' racial discrimination and retaliation claims against the Defendant.

DATED this 2nd day of December, 2008.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE